Case of Mitchell, 17752. Mary Mitchell v. Construction, Page 1. Counsel may proceed. Good morning, Your Honor. Good morning, Counsel. May it please the Court, my name is Emily Vineyard, and I represent the petitioner, appellant Mary Mitchell. With the Court's permission at this time, I would like to reserve five minutes for rebuttal. You will have five minutes. Will you please speak up a little bit, because this doesn't really amplify that much. Sure. Thank you. Thank you. Appellant is here today to request that this Court reverse the condition in finding that the petitioner, appellant, was injured in the course of and arising out of her employment with a respondent when she slipped on ice while walking back to the construction job site for three main reasons. First, as petitioner testified at hearing, she left the job site with permission and encouragement from her supervisor named Trish. She testified she left with permission, correct? Yes. Obviously, that was contradicted by the owners of the company, right? It was contradicted. There was an issue with whether Trish existed. What difference would it make if she had permission or not? Well, if she had permission, then she was encouraged to leave as she testified. Wait a minute. She wasn't encouraged to leave. It was all she said was she was given permission to leave and go to another job site to card union members. She took it as encouragement to leave because her supervisor, Trish, told her that if she went to this job site and she found that these workers were not union, then their company construction agency Did Trish tell her that or did the business agent tell her that? This is her testimony and this is what she had gathered from my conversation with Trish, her supervisor. So she felt that doing this action of going to check this job site, the status of the union workers, at the time she left to go do that, she was operating both as a steward of her union, which is a position that she held within her union, and also on behalf of her employer to see if they could potentially pick up work. Yeah, but therein lies the problem. Even if she was acting as a steward, I mean, she admitted that it was not common for union stewards to leave their assigned job site to check workers out at a different site. Didn't she herself say that? Yes. Isn't that a major problem? It indicates that that was a deviation from her assigned duties. Well, even if it was a deviation from her assigned duties, the law still provides for compensation in this circumstance. It can. So tell us why. You cited some cases that I think candidly are distinguishable. So normally, as you know, a deviation takes you outside the scope of the employment. Correct. So tell us why that that rule is not applied now. Well, the cases that I cited in my brief, first going to Johnson v. Illinois Workers' Compensation Commission, this case dealt with a sheriff who was on duty. He took a detour out of his assigned patrol zone in order to run a personal errand to just pick up his mail. When driving to an assignment and still outside of his patrol zone, he was injured in a car accident. Well, wait a minute. What happened before the car accident to the sheriff? He got a call, didn't he? Correct. Yeah. Well, then he went back to work. Right. And he returned to the patrol zone. Well, what did your client do? She went to go perform this task to check the union status. And when she started, she walked back to the job site. Well, if she left on a personal errand and doesn't resume working for the employer while she's walking along, she's not back to work until she clears the job site, and she didn't. Well, she arrived back to the job site. She was in the course of returning to her employment at the time. But she hadn't arrived back. That's the reason. There is absolutely no testimony as to where she fell on the sidewalk in this record. She did testify that she was walking back into the job site. Well, we understand she was walking to the job site. Right. There is no testimony in this record that she had gotten to the job site when she fell. She testified it was just outside the job site. Yeah, she was outside the job site. She hadn't gotten back to the job site. What differentiates the case that you cited is he got a call that he had to go on before he got in the accident. If there had been no call, he would not have recovered. Correct. But he was still returning to the course of his employment, traveling back to— No, he was in the course of his employment, not returning to it. He was in it. Well, there is also another case that I cited too, Cox v. Illinois Workers' Compensation Commission. In this case, petitioner had deviated from the course of his employment to run a personal errand similar to the other case. It was also involved in a car accident. Upon resuming his usual route— Wait, which case are you citing? Cox v. Illinois Workers' Compensation Commission. And here he was resuming his usual route in connection with employment, returning to that route. I believe the petitioner in this case was a labor—it was similar to this situation, but he was getting back into his work truck. What's the name of the case again? Cox v. Illinois Workers' Compensation Commission. Okay. In this case, the first district appellate court found that the claim was compensable because he had reentered the course of his employment after completing the personal errand. The distinction, the completion. Let me cite you a case that I think is more important. Checker Taxi Cab, early Illinois Supreme Court case. The Supreme Court explained, I quote, When an employee embarks upon a personal side trip, he does not return to the course of the employment until the trip is completed. And this is the key thing that applies here. That is, the journey toward the employment destination is not enough. That's your hurdle to overcome here. Because it was clear the evidence does not establish he actually got back into the building. And I suggest under the case law, that's the critical consideration. Yes, I don't think anybody's disputing she was certainly heading back to the job site and was about to get there. But if you don't return to the, quote, unquote, job site, according to the Supreme Court case, the destination toward it isn't enough. So how do you get around the Supreme Court language? You keep saying she was almost there. She was about there. She was two steps away. Right. But if you take this language as a requirement, the trip must be completed before you are back in the course. That's our issue. It's our issue that it was completed. She was back in the vicinity of the job site. I'm sorry? In the vicinity of the job site. Yes, she was back to, headed back to the job site. She was headed back. But she hadn't entered the job site. Correct. She didn't enter the actual building. But there are cases that state where outside of job sites are situations where there's plain, or petitioners injured in parking lots. And they slip and fall on ice in those situations. Yeah, but those are not generally deviation cases. See, the deviation cases have a specific requirement. When you deviate, you've got to get back to the job site. Getting back there wouldn't be enough. But anyway, so you want us to maybe expand the rule a little bit? Yes. Okay. We'll take it under advisement. And what about this Trish thing, if we get to that? You know, clearly the testimony, the implication from the construction company owners was that there is no Trish. Correct. But you have an explanation. Who is the mysterious Trish? So Trish was the individual who the petitioner had believed was her supervisor. The testimony by a respondent's owner, Beata Babowski and Lucas Menikiewicz, did not actually rebut the petitioner's testimony. Because Beata Babowski testified that no one on the job site was named Trish. But she also testified that she did not know the names of her employees on the job site. She didn't know how many there were on the job site. And that contradicts her testimony that she can say credibly that there's no Trish on the job site. When it comes to Lucas Menikiewicz, his testimony, he stated that he was a laborer and that he was considered a foreman on a petitioner's job site. And when he was asked if he was a supervisor for a petitioner, he responded something like that. Quote, he did not definitively admit at this point to being plaintiff's direct supervisor. Additionally, he testified that there was no one on the job site named Trish. But when asked if anyone on the job site was ever referred to as Trish, meaning whether anyone had the nickname of Trish, he answered that he did not recall. Wasn't there another problem, and I don't want to get into the specific details, but what struck me, and I think it obviously struck the commission, your client couldn't even describe what Trish looked like. Does that make any sense? Yes. Well, that's correct. But it was about three years after the accident happened that we were at trial. So it may not have been something, the description may not have been fresh in her memory at that time. Additionally, she had only worked on this job site for four days. This wasn't a very solid long-term relationship that she had with Trish, such that she would remember significant details about her appearance or other details like that. So the issue with the respondent's witness's testimony, essentially they just didn't rebut any of Petitioner's testimony in the fact that this Trish supervisor existed. It was simply that Trish was known to her as her personal supervisor, whether she was the foreman or not. I believe Lucas testified that he was specifically designated as the foreman on the job site, but he wouldn't admit to being Petitioner's supervisor. Additionally, it was an abuse of discretion for the denial of Petitioner's request to reopen Proust, which was filed just eight days after the arbitration hearing in order to call an additional witness, which was identified at hearing by a respondent as Katerzina as being present on this job site. Well, what was the good cause? What do you specifically think was the good cause to cause the arbitrator to reopen Proust? Was there any good cause? I mean, couldn't she have found, anticipated this issue before? Well, the Petitioner didn't realize that Katerzina, as described at hearing, was actually Trish. This wasn't something that she connected until she heard the same at that trial, and then she uncovered a phone number that she had, which connected a business phone number that she had designated for Trish, her supervisor. And then we had a private investigator look into the matter, and it turned out that the number was registered to Katerzina, which matched the explanation given. Couldn't she have anticipated this becoming an issue? If you're saying you had an effect that this mysterious Trish gave her permission as part of the argument to take this deviation, wouldn't you anticipate that would become an issue then, when you don't even know who the person is? Correct. We just, at the time of trial, it wasn't confirmed that Katerzina and Trish were the same person. No, but I know if you're going to say, you're putting out a case, and you're going to say that this person gave us permission to leave the job site, but you don't know who it is, you wouldn't anticipate that you're hanging your head on somebody that's not called as a witness? How are you going to establish this permission if the witness isn't there? Well, we just went based on her testimony to establish that, and we anticipated that Respondent would bring some witnesses, and potentially this person would have been a witness. But as Petitioner understood, this person was a supervisor. So if Respondent was bringing witnesses to trial, it was anticipated that this would be one of the people there. So does this case still turn on the original issue, as Justice Hoffman alluded to, whether or not there's a deviation, the person has returned from their side trip? It's really the critical issue. I mean, even if this mysterious Trish was around, she still has to come back to the job site, doesn't she not? Well, even if we conclude that Trish was a Petitioner's supervisor, she did exist. She did, based on Petitioner's testimony, she did strongly encourage Petitioner to go to the job site. The arbitrator didn't believe her, and neither did the commission. That's correct. Petitioner testified that she had permission of her supervisor, Trish, to check the job site. She couldn't describe Trish, did not know Trisha June's affiliation. It is troubling that a student would leave her job to check on the credentials of workers on another job site, but not know if the fellow employee supervisor that she worked with and received instructions from was even a union member. They didn't believe a word she said, which is their right to do, disbelieve her. They then went on to say the testimony of respondents' witnesses, Bobowski and Semenukovich, established that Sigmund Mukovich was the foreman on the job, and respondents did not have an employee named Trish, Trisha, or Tasha. The arbitrator finds the testimony of Bobowski and Semenukovich to be incredible, and the commission adopted. Well, it's our position that that reliance on the testimony of the Bobowski and the Semenukovich to establish that Trish didn't exist. It's our position that that reliance on that credibility aspect is flawed, because looking at the testimony very carefully, there was no confirmation that no one had the nickname of Trish. It was just that no one was named Trish, whereas the situation we know now that this woman was named Katarzyna. So the reliance on that witness testimony is simply flawed. So to draw that conclusion that this Trish person didn't exist and therefore didn't give permission or didn't encourage the petitioner to go to this job site for the purposes of potentially collecting a new job, that reliance simply is against the math as to the evidence. Thank you, counsel. You have time in reply. Counsel, you may respond. My name is Nicole Hanlon, and I'm here on behalf of Construction Cleaning Company. It is our position that the decision be affirmed in its entirety. We believe that the record does support the decision that was rendered today. I'd like to just go over a few points that counsel brought up on this case. There is the big issue of the petitioner leaving the job site, and there's some confusion as far as whether she was granted permission or not. We did not have any testimony that she was granted permission. It was her belief that she had permission to leave. The case seems to hinge on the fact that all things that respondent do. We didn't call the right witness. We didn't have the evidence to prove up their case. And it's still their burden of proof in this matter. The petitioner only worked for us for four days. She was a union steward. She left to go investigate the other job site. There's a lot of sub-issues that we can get off on a tangent, and some of those are tangents. But the real critical overarching issue is I think she's conceded. She left on a deviation. She left the job site. Her duty is that day we're to clean the building that go around. So she ends up at the other building, clearly deviates. But her position is, look, analogous to those other cases, she's back essentially at the job site. She was next door. She comes back. That's her argument. She's returned from the deviation. I think that's the position as it has to be. What's your response to that? We respectfully disagree. There was only testimony, and I will quote her, that she testified that she slipped on ice, that she's coming to the entryway. We don't know any more about that. There was no testimony whatsoever as far as what exit or entrance someone was supposed to go to enter this job site. We don't have a usual route. We don't have any specifics. She was not on the property that we know of. There was only one little testimony. She was with John Joe, her business agent. He wasn't called as a witness to testify either. It's our position, even the deviation, if she did go on this deviation, she did not return back to the job site. Let alone resume her duties. Correct. So it's not even clear that she was actually in the building around the premises, let alone resumed her duties. Correct. That's your position? Yes, that is our position. So there's no locational evidence. Correct. You know, I'll briefly touch on the motion to reopen proofs. Yeah, what about that? Huh? What about that issue? That's the other main issue. The motion to reopen proofs. Right. Yeah. We respectfully, I mean, I think the obituary was within the discretion of the commission to deny the motion to reopen proofs. The theory that we had surprise witness testimony is a little baffling to me in a sense of we don't even have a discovery system in the work matter. So they have the right to issue subpoenas. They have the right to subpoena documents. They have the right to call whatever witnesses they want to do. In this case, there were no subpoenas issued for any witnesses from the respondent. We investigated this matter. We did not have anybody by the name of Trish or Tasha on the job site. We brought in the foreman who was also a supervisor. That was a person that we were told that the petitioner had reported to and worked for. We brought that in. We have no testimony of any other issues that came up. I mean, the petitioner had ample opportunity three and a half years after the date of accident before the trial occurred to investigate and determine whatever additional evidence they wanted. What about her slender read, Althea, the slender read that they didn't realize they needed to find Miss Trish? Once again, I would say that it is not respondent's burden to prove up their case. This goes back to doing their due diligence, not on behalf of the respondent. We brought in the witnesses who testified. I mean, should they or should they not have anticipated they would need Trish? They should have anticipated it. I mean, if they knew it, there's attached to one of their penalties is an email exchange going back and forth between myself and the attorney from her office as well stating, we do not have anybody by the name of Trish. Is there a last name for Trish? Is there a nickname? There was a notice back in, I think it was April of 2014, before the trial. But that would be an issue? That would be an issue. So we respectfully request that the decision be affirmed in its entirety. Thank you. Thank you, counsel. Counsel, you may reply. Thank you, Your Honors. Regarding the issue of that petitioner slipped and fell on and therefore injured her knee, I would just like to bring your attention to a portion of the record that I did cite in my brief. It's page 5 of my brief, and the record, a citation, is on Warren C-8990. Those pages. The quote is that plaintiff testified, When I walked up to the door, I was walking up the little pathway to the door. I slipped on ice and I went down. That indicates, at least to me, that she had effectively returned to the course of her employment. She was walking up the pathway to the door, specifically the words that she testified. She was essentially at the location. She was at the job site. And we don't know from the job site. As she testified and as the owner and the other witness testified, it was a construction cleaning company. They were there to clean up after construction. That was the job that they were all performing. So in this particular situation, it's not a stretch of the imagination to believe that maybe they were cleaning things outside. It's possible that this job site, her walking up this pathway to the door, that she was effectively on the job site at that time. Well, it's possible. I'm sorry. It's possible. Yes. But is it, does it exist within the realm of probability? Well, it's not specific in the record. But it does state that she, at a point in her testimony, she walked up to the door and she was walking up the pathway to the door. So it's possible that in this particular situation. The possibility doesn't carry the date anywhere. Correct. It has to exist within the realm of probability. Right. But she was on the job site as she was walking up the pathway to the door. So you don't want us to exalt form over substance. She's on the job site. Stay away from possibilities when you make an argument. Okay. Yes, well. He's trying to tell you that subtly, so I'm telling you more directly. Thank you. Yes, so essentially this was, could be considered the job site. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments. In this matter, will we take an advisement that this position shall issue. And the court will ask the clerk to.